UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| CRISTA B.,[*] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:18-CV-00042-BP |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | Assigned to U.S. Magistrate Judge |

# REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), the plaintiff seeks judicial review of the decision of the Commissioner of Social Security, who denied her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The Senior United States District Judge reassigned the case to this Court pursuant to 28 U.S.C. § 636(c). The parties have not consented to proceed before a United States Magistrate Judge. After considering the pleadings, briefs, and administrative record, the undersigned recommends the decision of the Commissioner be affirmed and this case dismissed.

## I. STATEMENT OF THE CASE

Plaintiff applied for disability insurance benefits on April 8, 2015 and supplemental security income on April 14 of the same year, alleging impairments that were disabling as of May 14, 2014. Those applications were denied initially and after reconsideration. The plaintiff

---

[*] To protect the privacy of plaintiffs in social security cases, the undersigned identifies the plaintiff only by first name and last initial.

requested a hearing, which was held before an Administrative Law Judge on February 7, 2017. The ALJ issued a decision on April 18, 2017 finding her not disabled.

Specifically, the ALJ found during step one that the plaintiff had not engaged in substantial gainful activity after the alleged onset date. (Doc. 14-1, 31). At step two, the ALJ found plaintiff had the severe impairments of fibromyalgia, obesity, degenerative disc disease, asthma, bilateral carpal tunnel syndrome, headaches, borderline intellectual function, depression, anxiety, and bipolar disorder. (Doc. 14-1, 32). In the third step, the ALJ found those severe impairments did not meet and were not the equivalent of any listed impairments. (Doc. 14-1, 34). The step three analysis continued with the ALJ determining the claimant retained the residual functional capacity to perform light work with limitations to mobility, environmental irritants, and simple instructions and limited interaction with others. (Doc. 14-1, 38). The ALJ determined she could not return to any past relevant work, but there were jobs she could perform. (Doc. 14-1, 45-46). The ALJ therefore determined she was not under a disability between the alleged onset date and the date the decision was issued. (Doc. 14-1, 47).

The plaintiff then applied to the Appeals Council, which denied review on January 30, 2018. Therefore, the ALJ's decision is the Commissioner's final decision and properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("The Commissioner's final decision includes the Appeals Council's denial of [a claimant's] request for review").

## II. FACTUAL BACKGROUND

According to the pleadings, testimony at the administrative hearing, and administrative record, the plaintiff was forty-seven and living with her father at the time of the administrative hearing. She has an Associate's Degree and work history in manufacturing, lab work, and office work. She believes her physical and mental impairments render her disabled under the Act.

## III. STANDARD OF REVIEW

A person is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(c)(a)(3)(A), 423 (d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b).

To evaluate a disability claim, the Commissioner follows a

> five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.

*Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart,*

3

415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the Court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Newton*, 209 F.3d at 452. The Court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the Court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton*, 209 F.3d at 452.

## IV. DISCUSSION

The plaintiff alleges she has severe impairments that were not properly incorporated by the ALJ, and that the severe impairments he did assess are not properly reflected in the residual functional capacity. (Doc. 17, 2-3).

**Severe Impairments**

First, she claims a history of multiple surgeries and procedures for hernia repair, as well as limitations imposed following one of those surgeries, should have been considered as a severe impairment. (Doc. 17, 4-6). The ALJ discussed her hernia, saying it

> fails to meet the durational requirements, as there is no evidence that the impairment lasted or was expected to last 12 months. ... She had a mesh hernia repair on March 16, 2015. It was noted that she was doing well after surgery. Therefore, it is found to be non-severe as there is no evidence that it is functionally limiting or meets the durational requirements.

(Doc. 14-1, 33) (internal record citations omitted). Plaintiff argues that an instruction by her surgeon after her procedure to not lift anything, as well as a later restriction by a nurse practitioner to lift or carry weights less than ten pounds, show that the durational requirement was met and should have contributed limitations to her RFC.

But, a nurse practitioner is not an acceptable medical source who can assess impairments independently. *See* SSR 06-03P. Absent evidence that a doctor or other acceptable medical source established the hernias were persistent for the required year, the ALJ's decision is entitled to deference, and the claimant must show that no reasonable reading of the record would support the ALJ's conclusions. *See* 42 U.S.C. § 405(g). An instruction from a physician about how she should behave immediately after a surgery is far from sufficient to show that she was substantially impaired for the length of time required.

She also argues that her arthritis should have been considered as a severe impairment, and not only in the context of the assessed degenerative disc disease. (Doc. 17, 6-7). The ALJ found that there was "no medical evidence to substantiate" an arthritis impairment to the standards required by the Act. (Doc. 14-1, 34). Plaintiff points to a note from Dr. Christopher Eddleman that she has "bony changes that are indicative of micromotion chronic back pain" as support for the

assertion that failure to consider arthritis as a severe impairment is error. (Doc. 17, 7) (citing Doc. 14-2, 549). That assertion by Dr. Eddleman is on a checkbox questionnaire, and Dr. Eddleman listed her "physical diagnosis" resulting in those limitations as lumbar radiculopathy. (Doc. 14-2, 549). However, it is unnecessary to dive into the medical commonalities or differences between arthritis and lumbar radiculopathy, because the ALJ discussed evidence from Dr. Eddleman, including the lumbar radiculopathy diagnosis. (Doc. 14-1, 41). The plaintiff must show, then, that no reasonable person could read the record and find that Dr. Eddleman's statement about bony changes and chronic back pain in the context of lumbar radiculopathy did not establish arthritis as a severe impairment. The ALJ considered Dr. Eddleman's opinion, and nothing in the record or plaintiff's argument shows any error in failing to assess arthritis as a severe impairment after that consideration. Plaintiff points to no evidence from any source except this single assessment of lumbar radiculopathy in support of her assertion, and so there is far from the required showing to prove the ALJ's determination is unsupported by substantial evidence.

**Residual Functional Capacity**

Next, she points to mental health issues noted by consulting psychologist Dr. Stephen Osborne but not considered severe by the ALJ. (Doc. 17, 8). She specifically cites deficits in visual and auditory processing and weaknesses in judgment and planning. (Doc. 17, 7). In explaining the RFC assessment, the ALJ described Dr. Osborne's report as assessing her with "weakness in concentration and attention which may be well related to attentional deficits or personality .... [Dr. Osborne] stated that accommodations and modifications did not appear necessary." (Doc. 14-1, 44). The ALJ also assigned Dr. Osborn's opinion little weight because he found the report was "not supported by any examination findings that the claimant actually experiences the symptoms"

she described and "the generalizations are not consistent with other medical evidence as the claimant has had minimal treatment for her impairments." (Doc. 14-1, 44).

The actual text of Osborne's report found the claimant "place[d] in the borderline range of intellectual functioning" and that she scored weaker in visual and auditory processing than other areas, creating "difficulties in sustaining attention and concentration and focus." (Doc. 14-2, 303). The RFC explicitly limits the plaintiff to simple instructions and tasks. (Doc. 14-1, 38). Dr. Osborne's summary states that "in tasks that require sustained attention and concentration and completing those tasks in a timely and efficient manner, she struggles significantly in comparison with others in her norm group." (Doc. 14-2, 303). The RFC assessed appears almost perfectly congruous with the limitations actually assessed by Dr. Osborne, and so plaintiff has not shown that this finding is unsupported by substantial evidence.

Finally, plaintiff also claims that impairments the ALJ did classify as severe produce more drastic limitations than acknowledged by the ALJ, specifically listing migraine triggers and the mental impairments discussed above. (Doc. 17, 8-9). Her entire argument about additional limitations from migraines, without any references to medical opinions, is that

> the residual functional capacity assessment does not incorporate off-task episodes related to the Plaintiff's migraines; nor does it include a restriction against exposure to conditions which the Plaintiff described as migraine triggers. Thus, the ALJ's residual functional capacity assessment is deficient, as he failed to incorporate limitations based upon migraine headaches, despite acknowledging that this condition interferes with her ability to work.

(Doc. 17, 8) (internal citations to the ALJ's opinion and administrative hearing omitted). Plaintiff does not cite any objective medical record assessing her with these additional limitations. The ALJ is not required to show that the RFC is compatible with all of a claimant's self-reported symptoms, but instead to evaluate that testimony in the context of objective medical evidence and determine

the remaining capacity for work. *See Newton*, 209 F.3d at 452. Then, to upset that determination, the plaintiff must show that no reasonable person could find support in the record for the RFC assessed by the ALJ, not only that some conflict might appear to exist between a claimant's purported symptoms and the RFC. *Id.* It is insufficient to claim that the plaintiff alleged at some points to have additional limitations without grounding those limitations in available medical evidence. *See Masterson*, 309 F.3d at 272.

As for the mental impairments, plaintiff objects that the hypothetical question posed to the vocational expert did not incorporate limitations in the four "paragraph B" areas. (Doc. 17, 9). Plaintiff claims it is reversible error to fail to include these limitations in a hypothetical question to the VE, while the Commissioner argues it is not such a reversible error, so long as the resulting RFC properly incorporates the assessed limitations. (Docs. 17, 9-10; 20, 5). Plaintiff specifically argues that this error should have precluded the ALJ from finding she could return to past relevant work. (Doc. 17, 10). However, the ALJ made no such determination in this case, and stated plainly that "[t]he claimant is unable to perform any past relevant work." (Doc. 14-1, 45). She further claims that because the regulations state that the category of understanding, remembering, and applying information refers to following 1- or 2-step oral instructions to execute a task, it is error to find she can perform jobs in the Dictionary of Occupational Titles as reasoning level 1, which require the ability to carry out simple 1- or 2- step instructions. (Doc. 17, 11) (internal citations omitted).

Although the ALJ did find that the plaintiff demonstrated a moderate limitation in understanding, remembering, and applying information, he specifically stated that "she could follow written and spoken instructions" according to the records and her own testimony. (Doc. 14-1, 36). So, the fact that she was assessed with a moderate limitation in this category does not mean

it is error to find she can follow simple instructions, because the category has other components which may be more impaired, but the ALJ found based on the evidence—including the claimant's own testimony—that she was capable of following simple instruction. The ALJ explained that

> [t]he limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The … residual functional capacity assessment reflects the degree of limitation [the ALJ] found in the "paragraph B" mental function analysis.

(Doc. 14-1, 38). A "paragraph B" categorization is explicitly not an RFC assessment, and so it is not error to construct an RFC that might include some capability to perform tasks covered by one of those categories. *See Perez*, 415 F.3d at 462.

## V. CONCLUSION

Because the plaintiff has failed to show that the ALJ's decision is either unsupported by substantial evidence or the result of legal error, the undersigned **RECOMMENDS** the decision of the Commissioner be **AFFIRMED** and this case **DISMISSED**.

**IT IS ORDERED** that this case is **TRANSFERRED** to the docket of Senior United States District Judge Sam R. Cummings.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing

before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated June 19, 2019.

*Hal R. Ray, Jr.*
HAL R. RAY, JR.
**UNITED STATES MAGISTRATE JUDGE**